# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEWART MANAGO, | ) 1:11-cv—01172-BAM-HC |
| | ) |
| Petitioner, | ) ORDER DISMISSING THE PETITION FOR |
| | ) FAILURE TO STATE A CLAIM |
| | ) COGNIZABLE IN A PROCEEDING |
| v. | ) PURSUANT TO 28 U.S.C. § 2254 |
| | ) (DOC. 1) |
| MATTHEW CATE, | ) |
| | ) ORDER DECLINING TO ISSUE A |
| Respondent. | ) CERTIFICATE OF APPEALABILITY |
| | ) |
| | ) ORDER DIRECTING THE CLERK TO |
| | CLOSE THE ACTION |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), Petitioner has consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting consent in a signed writing filed by Petitioner on August 1, 2011 (doc. 5). Pending before the Court is the petition, which was filed on July 15, 2011, and reassigned to the undersigned Magistrate Judge on October 17, 2011.

1

1    I.   <u>Screening the Petition</u>

2         Rule 4 of the Rules Governing § 2254 Cases in the United

3   States District Courts (Habeas Rules) requires the Court to make

4   a preliminary review of each petition for writ of habeas corpus.

5   The Court must summarily dismiss a petition "[i]f it plainly

6   appears from the petition and any attached exhibits that the

7   petitioner is not entitled to relief in the district court...."

8   Habeas Rule 4; <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir.

9   1990); <u>see</u> <u>also</u> <u>Hendricks v. Vasquez</u>, 908 F.2d 490 (9th Cir.

10  1990).  Habeas Rule 2(c) requires that a petition 1) specify all

11  grounds of relief available to the Petitioner; 2) state the facts

12  supporting each ground; and 3) state the relief requested.

13  Notice pleading is not sufficient; rather, the petition must

14  state facts that point to a real possibility of constitutional

15  error.  Rule 4, Advisory Committee Notes, 1976 Adoption;

16  <u>O'Bremski v. Maass</u>, 915 F.2d at 420 (quoting <u>Blackledge v.</u>

17  <u>Allison</u>, 431 U.S. 63, 75 n.7 (1977)).  Allegations in a petition

18  that are vague, conclusory, or palpably incredible are subject to

19  summary dismissal.  <u>Hendricks v. Vasquez</u>, 908 F.2d 490, 491 (9th

20  Cir. 1990).

21        Further, the Court may dismiss a petition for writ of habeas

22  corpus either on its own motion under Habeas Rule 4, pursuant to

23  the respondent's motion to dismiss, or after an answer to the

24  petition has been filed.  Advisory Committee Notes to Habeas Rule

25  8, 1976 Adoption; <u>see</u>, <u>Herbst v. Cook</u>, 260 F.3d 1039, 1042-43

26  (9th Cir. 2001).

27        A petition for habeas corpus should not be dismissed without

28  leave to amend unless it appears that no tenable claim for relief

2

1  can be pleaded were such leave granted.   <u>Jarvis v. Nelson</u>, 440

2  F.2d 13, 14 (9th Cir. 1971).

3      II.   <u>Background</u>

4      The Court has reviewed the petition, which is over 330 pages

5  in length.   Petitioner, an inmate of the California Correctional

6  Institution at Tehachapi, California (CCI), challenges his

7  validation as an associate of the Black Guerrilla Family (BGF),

8  which occurred on December 31, 2009, while Petitioner was an

9  inmate of the California State Prison at Sacramento (CSP

10  Sacramento).   (Pet. 18.)

11      Petitioner raises the following claims in the petition: 1)

12  officials of the California Department of Corrections and

13  Rehabilitation (CDCR) have abused the prison gang validation

14  procedure as a ruse to punish the Petitioner for exercising his

15  constitutional right to file complaints regarding staff's

16  criminal behavior within the CDCR (pet. 5, 21,); 2) CDCR and

17  prison officials illegally read Petitioner's legal materials and

18  word product out of his presence and without a court order to do

19  so and used confidential information from his private attorney,

20  Emily Maloney, concerning pending litigation against other CDCR

21  agents to start a prison gang validation proceeding as a ruse to

22  punish the Petitioner for filing grievances (<u>id.</u> at 7, 25); 3)

23  CDCR and prison officials corruptly conspired to abuse the prison

24  gang validation procedures as a ruse to punish the Petitioner for

25  filing inmate grievances against CCI correctional staff in

26  violation of the First Amendment and without a legitimate or

27  valid penological purpose (<u>id.</u> at 29-30, 69-70); 4) prison

28  officials used the gang validation procedure as a ruse to punish

Petitioner for reading black militant literature that was
otherwise allowed into the institution and which Petitioner had a
First Amendment right to read, including specified titles
concerning George Jackson and Black history (id. at 31); 5) CDCR
and prison officials corruptly conspired to have Petitioner
validated as an active associate of the BGF and to retain him in
the Security Housing Unit (SHU) based on false, unreliable, and
misleading information that was previously found insufficient
pursuant to California regulations, including tattoos, reading
materials on George Jackson, and a "Black Seeds" calendar for
validation at CSP Sacramento, knowing that it would subject
Petitioner to a risk of retaliation and retribution from other
groups in prison who are opposed to the BGF, which resulted in
the change of Petitioner's release date from June 2013 to October
2016 (id. at 32, 54); 6) Petitioner has a protected liberty
interest not to be placed into the SHU for an indeterminate term
based on a false and retaliatory prison gang validation which
resulted from inadequate procedural safeguards in the validation
process and in the procedures governing periodic review of
inmates assigned to indeterminate terms in the SHU for gang
affiliation, and Petitioner's right to due process of law was
violated by the sentence to an indeterminate SHU term without
ascertainment of whether the information relied upon had some
indicia of reliability, without the support of some evidence in
the record, and without an opportunity to present his views to
the decision maker, which was the "IGI" (id. at 55, 57-58, 66-
68); and 7) Petitioner was subjected to an ex post facto law by
the application to him of Cal. Pen. Code §§ 2933(A)-(B) and

4

3057(D), which were amended and took effect on January 25, 2010, and associated regulations and instructional memoranda of the CDCR, which increased the amount of credits some prisoners earn, but which are not applicable to prison gang members placed in the SHU (id. at 56, 61-62).

Petitioner appears to allege that as a direct result of the false prison gang validation, his release date has been changed from June 2013 to October 2016; however, it appears that some words are missing from the pertinent sentence. (Id. at 54.)  In any event, the process or mechanism by which the gang validation affected Petitioner's release date is not stated except for indirect indications that Petitioner could not earn conduct credits while in the SHU.

Petitioner admits that he is a member of the Project Watts Crips with a moniker of "Eightball" who has never dropped out or debriefed; however, he alleges that he was not a member of the BGF and alleges that he cannot be a member of two gangs at the same time.  (Pet. 18-20, 34.)  He alleges that he has no desire to become a member or associate of the BGF and that the prison has documented that the BGF and Crips are enemies within the CDCR.  (Id. at 33.)  He alleges that he was previously deemed a reliable source concerning misconduct of correctional officers within the institution. (Id. at 36-37.)

Petitioner requests the following relief:  expungement from his "C" file of the false, unreliable and insufficient information to validate his active association with the BGF; release from the SHU; and return of various materials allegedly taken wrongfully by CDCR agents, including his reading materials,

all legal documents relating to pending litigation against CDCR
agents, all investigative materials sent to Petitioner from
attorney Emily Maloney concerning two cases pending in the
courts, and information concerning names and addresses of inmate
and staff who were witnesses in the litigation or witnesses to
serious misconduct within the CDCR.  (Pet. 72-73.)

III.  <u>Subject Matter Jurisdiction</u>

This Court has a duty to determine its own subject matter
jurisdiction, and lack of subject matter jurisdiction can be
raised on the Court's own motion at any time. Fed. R. Civ. P.
12(h)(3); <u>CSIBI v. Fustos</u>, 670 F.2d 134, 136 n.3 (9th Cir. 1982)
(citing <u>City of Kenosha v. Bruno</u>, 412 U.S. 507, 511-512 (1973)).[1]
A court will not infer allegations supporting federal
jurisdiction; a federal court is presumed to lack jurisdiction in
a particular case unless the contrary affirmatively appears, and
thus federal subject matter jurisdiction must always be
affirmatively alleged.  Fed. R. Civ. P. 8(a); <u>Stock West, Inc. v.
Confederated Tribes of the Colville Reservation</u>, 873 F.2d 1221,
1225 (9th Cir. 1989).  When a federal court concludes that it
lacks subject matter jurisdiction, the court must dismiss the
action.  <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 514 (2006); <u>Moore v.
Maricopa County Sheriff's Office</u>, 657 F.3d 890, 894 (9th Cir.
2011).

Because the petition was filed after April 24, 1996, the
effective date of the Antiterrorism and Effective Death Penalty

---

[1] The Court notes that Petitioner failed to allege exhaustion of
administrative remedies, and he may have named an improper respondent.
However, in the interest of efficiency, the Court will direct its screening to
the fundamental jurisdictional question.

1    Act of 1996 (AEDPA), the AEDPA applies in this proceeding. <u>Lindh</u>
2    <u>v. Murphy</u>, 521 U.S. 320, 327 (1997), <u>cert.</u> <u>denied</u>, 522 U.S. 1008
3    (1997); <u>Furman v. Wood</u>, 190 F.3d 1002, 1004 (9th Cir. 1999).

4         A district court may entertain a petition for a writ of
5    habeas corpus by a person in custody pursuant to the judgment of
6    a state court only on the ground that the custody is in violation
7    of the Constitution, laws, or treaties of the United States.  28
8    U.S.C. §§ 2254(a), 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362,
9    375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. –, –, 131 S.Ct. 13,
10   16 (2010) (per curiam).

11        A habeas corpus petition is the correct method for a prisoner
12   to challenge the legality or duration of his confinement.  <u>Badea</u>
13   <u>v. Cox</u>, 931 F.2d 573, 574 (9th Cir. 1991) (quoting <u>Preiser v.</u>
14   <u>Rodriguez</u>, 411 U.S. 475, 485 (1973)); Advisory Committee Notes to
15   Habeas Rule 1, 1976 Adoption.  Claims challenging the validity of
16   a prisoner's continued incarceration, including the fact or
17   length of the custody, are within the "heart of habeas corpus"
18   and are cognizable only in federal habeas corpus.  <u>Preiser v.</u>
19   <u>Rodriguez</u>, 411 U.S. at 498-99, 499 n.14.

20        In contrast, a civil rights action pursuant to 42 U.S.C.
21   § 1983 is the proper method for a prisoner to challenge the
22   conditions of that confinement but not the fact or length of the
23   custody.  <u>McCarthy v. Bronson</u>, 500 U.S. 136, 141-42 (1991);
24   <u>Preiser</u>, 411 U.S. at 499; <u>Badea</u>, 931 F.2d at 574; Advisory
25   Committee Notes to Habeas Rule 1, 1976 Adoption.

26        Some decisions of prison administrators have been recognized
27   as affecting the duration of confinement.  For example, a
28   decision in a prison disciplinary proceeding that results in a

1  loss of previously earned time credits is a core habeas challenge
2  to the duration of a sentence that must be raised by habeas
3  corpus.  Superintendent v. Hill, 472 U.S. 445, 454 (1985)
4  (determining a procedural due process claim concerning loss of
5  time credits resulting from disciplinary procedures and
6  findings); Preiser v. Rodriguez, 411 U.S. 475, 500.

7      The Supreme Court's decisions concerning the limits of
8  habeas jurisdiction and § 1983 jurisdiction have been rendered in
9  cases involving § 1983 proceedings.  However, the limits on
10 habeas jurisdiction or the appropriate extent of any overlap
11 between habeas and § 1983 has not been definitively addressed by
12 the Supreme Court.  The Supreme Court has adverted to the
13 possibility of habeas as a potential alternative remedy to an
14 action under § 1983 for unspecified additional and
15 unconstitutional restraints during lawful custody, Preiser v.
16 Rodriguez, 411 U.S. at 499-500, but the Court has declined to
17 address whether a writ of habeas corpus may be used to challenge
18 conditions of confinement as distinct from the fact or length of
19 confinement itself, see, Bell v. Wolfish, 441 U.S. 520, 527 n.6
20 (1979).

21     Nevertheless, the Supreme Court continues to recognize a
22 "core" of habeas corpus that refers to suits where success would
23 inevitably affect the legality or duration of confinement.  Where
24 a successful suit's effect on the duration of confinement is less
25 likely, the prisoner has a remedy by way of § 1983, and the
26 matter is not within the core of habeas corpus.  See, e.g.,
27 Wilkinson v. Dotson, 544 U.S. at 82 (success in the form of a new
28 opportunity for review of parole eligibility, or a new parole

8

hearing at which authorities could discretionarily decline to shorten a prison term, would not inevitably lead to release, and the suit would not lie at the core of habeas corpus); <u>Wilkinson v. Austin</u>, 545 U.S. 209 (2005) (where the inmate proceeded pursuant to § 1983 with inmates' procedural due process challenges to administrative placement in the harsh conditions of a "supermax" prison where such placement precluded parole consideration).

In the singular context of parole, some cases decided by the Ninth Circuit Court of Appeals have recognized a possibility of habeas jurisdiction in suits that do not fall within the core of habeas corpus. <u>Bostic v. Carlson</u>, 884 F.3d 1267 (9th Cir. 1989) (habeas jurisdiction over a claim seeking expungement of a disciplinary finding likely to accelerate eligibility for parole)[2]; <u>Docken v. Chase</u>, 393 F.3d 1024 (9th Cir. 2004) (a claim challenging the constitutionality of the frequency of parole reviews, where the prisoner was seeking only equitable relief, was held sufficiently related to the duration of confinement).

Nevertheless, it is established in this circuit that where a successful challenge to a disciplinary hearing or administrative action will not necessarily shorten the overall length of confinement, then habeas jurisdiction is lacking. In <u>Ramirez v. Galaza</u>, 334 F.3d 850 (9th Cir. 2003), a prisoner sought relief pursuant to § 1983 for allegedly unconstitutional disciplinary proceedings that resulted in administrative segregation. Expungement of the disciplinary action was not shown to be likely

---

[2] The Court notes that <u>Bostic</u> involved a suit pursuant to 28 U.S.C. § 2241, not § 2254.

9

to accelerate eligibility for parole; rather, success would have
meant only an opportunity to seek parole from a board that could
deny parole on any ground already available to it.  Thus, the
suit did not threaten to advance the parole date.  Id. at 859.
It was held that § 1983 was the appropriate remedy because the
alleged constitutional errors did not affect the overall length
of the prisoner's confinement; success in the § 1983 action would
not necessarily have resulted in an earlier release from
incarceration, and the § 1983 suit did not intrude upon the core
or "heart" of habeas jurisdiction.  Ramirez, 334 F.3d at 852,
858.

        The court in Ramirez went further and considered the related
question of the extent of habeas corpus jurisdiction, expressly
stating that its holding "also clarifies our prior decisions
addressing the availability of habeas corpus to challenge the
conditions of imprisonment."  334 F.3d at 858.  The court
reviewed the decisions in Bostic v. Carlson and Neal v. Shimoda[3]
and concluded as follows:

> Our decision in *Neal v. Shimoda,* 131 F.3d 818 (9th
> Cir.1997), illustrates the importance of measuring the
> likelihood that a suit under § 1983 will affect the
> length of the prisoner's confinement. In *Neal*, two
> state prisoners filed suits under § 1983 alleging that
> they were classified as sex offenders in violation of
> the Due Process and Ex Post Facto guarantees. *Id.* at
> 822-23. Among other harms, both inmates argued that the
> classification affected their eligibility for parole.
> *Id.* We held that *Heck* did not require the inmates to
> invalidate their classification before bringing suit

_____

[3] In Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997), it was held that
success in a suit challenging administrative placement in a state sex
offender program which rendered the participants ineligible for parole did
not necessarily affect the duration of confinement because success would not
necessarily shorten the inmate's sentence, but would mean at most that the
inmate would be eligible for parole consideration.

under § 1983, because a favorable judgment "will in no
way guarantee parole or necessarily shorten their
prison sentences by a single day." *Id.* at 824. The
prisoner suits did not seek to overturn a disciplinary
decision that increased their period of incarceration.
Rather, a successful § 1983 action would provide only
"a ticket to get in the door of the parole board." *Id.*
A favorable judgment, therefore, would not "undermine
the validity of their convictions," or alter the
calculus for their possible parole. *Id.*

*Neal* makes clear that under *Preiser* habeas jurisdiction
is proper where a challenge to prison conditions would,
if successful, necessarily accelerate the prisoner's
release. Thus, *Neal* accords with our holding here that
habeas jurisdiction is absent, and a § 1983 action
proper, where a successful challenge to a prison
condition will not necessarily shorten the prisoner's
sentence.

Ramirez, 334 F.3d at 858-59.

California's policy of assigning suspected gang affiliates

to the secured housing unit (SHU) is not a disciplinary measure,

but rather an administrative strategy designed to preserve order

in the prison and to protect the safety of all inmates.  Munoz v.

Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997).  An inmate's

liberty interest in being free from the more restrictive

conditions of confinement in secured housing is generally

protected by the Due Process Clause, which requires notice of the

factual basis for the administrative action, an opportunity to be

heard, and notice of any adverse decision.  Cf., Wilkinson v.

Austin, 545 U.S. 209, 223-25 (2005).  However, placement in

administrative segregation or secured housing does not

necessarily affect the legality or duration of the inmate's

confinement.

In this case, Petitioner alleges that he has been subjected

to retaliatory and unfair gang validation procedures that

resulted in a gang validation finding that Petitioner alleges was

11

unsupported by reliable evidence and was the result of numerous

constitutional violations.  Petitioner has not alleged specific

facts showing that his release date has been affected by the gang

validation process.  To the extent that Petitioner is complaining

that his release date will be affected by the gang validation

process or by the application of other laws because he cannot

earn additional credits while in the SHU, Petitioner has not

shown that his challenge to the gang validation process would, if

successful, necessarily accelerate his release.  Accordingly, it

appears that here, habeas jurisdiction is absent, and a § 1983 is

action proper because a successful challenge to the gang

validation will not necessarily shorten Petitioner's sentence.

In summary, Petitioner's allegations concern only the

conditions of his confinement.  Indirect allegations that support

a conclusion that Petitioner has lost the opportunity to earn

credits result in at best only a speculative effect on the

duration of his confinement.

The Court concludes that Petitioner does not allege facts

that demonstrate that success in this suit would necessarily

affect the legality or duration of his confinement.  Thus,

Petitioner has not alleged facts that demonstrate subject matter

jurisdiction in this Court.

Further, the defect in Petitioner's claim results not from a

failure to allege specific facts, but rather from the essential

nature of the claim as one relating solely to conditions of

confinement.

Because it appears that this Court lacks subject matter

jurisdiction over Petitioner's claims, the petition should be

1  dismissed.

2       Should Petitioner wish to pursue his claims, he must do so

3  by way of a civil rights complaint pursuant to 42 U.S.C. § 1983.

4  Thus, the Clerk will be directed to send an appropriate form

5  complaint to Petitioner.

6       IV.  <u>Certificate of Appealability</u>

7       Unless a circuit justice or judge issues a certificate of

8  appealability, an appeal may not be taken to the court of appeals

9  from the final order in a habeas proceeding in which the

10 detention complained of arises out of process issued by a state

11 court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537

12 U.S. 322, 336 (2003).  A certificate of appealability may issue

13 only if the applicant makes a substantial showing of the denial

14 of a constitutional right.  § 2253(c)(2).  Under this standard, a

15 petitioner must show that reasonable jurists could debate whether

16 the petition should have been resolved in a different manner or

17 that the issues presented were adequate to deserve encouragement

18 to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336

19 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A

20 certificate should issue if the Petitioner shows that jurists of

21 reason would find it debatable whether the petition states a

22 valid claim of the denial of a constitutional right or that

23 jurists of reason would find it debatable whether the district

24 court was correct in any procedural ruling.  <u>Slack v. McDaniel</u>,

25 529 U.S. 473, 483-84 (2000).

26      In determining this issue, a court conducts an overview of

27 the claims in the habeas petition, generally assesses their

28 merits, and determines whether the resolution was debatable among

1  jurists of reason or wrong.  Id.   It is necessary for an

2  applicant to show more than an absence of frivolity or the

3  existence of mere good faith; however, it is not necessary for an

4  applicant to show that the appeal will succeed.   Miller-El v.

5  Cockrell, 537 U.S. at 338.

6     A district court must issue or deny a certificate of

7  appealability when it enters a final order adverse to the

8  applicant.  Habeas Rule 11(a).

9     Here, because Petitioner's claims relate only to conditions

10  of confinement, jurists of reason would not find it debatable

11  whether the Court was correct in its ruling.  Accordingly,

12  Petitioner has not made a substantial showing of the denial of a

13  constitutional right, and the Court will decline to issue a

14  certificate of appealability.

15     V.  Disposition

16     Accordingly, it is ORDERED that:

17     1) The petition for writ of habeas corpus is DISMISSED for

18  lack of subject matter jurisdiction without prejudice to

19  Petitioner's right to file a civil rights action pursuant to 28

20  U.S.C. § 1983; and

21     2) The Clerk of Court is DIRECTED to close the case because

22  this order terminates the action in its entirety; and

23     3) The Court DECLINES to issue a certificate of

24  appealability; and

25     4) The Clerk is DIRECTED to mail to Petitioner a form for

26  ///

27  ///

28  ///

14

filing a civil rights complaint pursuant to 42 U.S.C. § 1983 by a

person in custody.

     IT IS SO ORDERED.

Dated:   __January 26, 2012__           __/s/ **Barbara A. McAuliffe**__
                                      UNITED STATES MAGISTRATE JUDGE