# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEWART MANAGO, | ) 1:11-cv—01172-AWI-BAM-HC |
| Petitioner, | ) FINDINGS AND RECOMMENDATIONS RE: <br> ) RESPONDENT'S MOTION TO DISMISS <br> ) THE PETITION (DOCS. 22, 1, 11) |
| v. | ) |
| MATTHEW CATE, | ) FINDINGS AND RECOMMENDATIONS TO <br> ) GRANT RESPONDENT'S MOTION TO |
| Respondent. | ) DISMISS, DISMISS THE ACTION, AND <br> ) DECLINE TO ISSUE A CERTIFICATE OF <br> ) APPEALABILITY (DOC.  1) |
| | ) |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304.  Pending before the Court is Respondent's motion to dismiss the petition on the grounds of a failure to exhaust state court remedies and procedural default.  The motion was filed on June 18, 2012, and Petitioner filed opposition with a declaration on July 9, 2012.  No reply was filed.

   I.  Proceeding by a Motion to Dismiss

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty

1

Act of 1996 (AEDPA), the AEDPA applies to the petition.  <u>Lindh v.</u> <u>Murphy</u>, 521 U.S. 320, 327 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. §§ 2254(a), 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. –, –, 131 S.Ct. 13, 16 (2010) (per curiam).

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules) allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court...."

The Ninth Circuit has allowed respondents to file motions to dismiss pursuant to Rule 4 instead of answers if the motion to dismiss attacks the pleadings by claiming that the petitioner has failed to exhaust state remedies or has violated the state's procedural rules.  <u>See</u>, <u>e.g.</u>, <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss a petition for failure to exhaust state remedies).

Further, a respondent may file a motion to dismiss after the Court orders the respondent to respond, and the Court should use Rule 4 standards to review a motion to dismiss filed before a formal answer.  <u>See</u>, <u>Hillery v. Pulley</u>, 533 F. Supp. 1189, 1194 & n.12 (C.D.Cal. 1982).

In this case, upon being directed to respond to the petition

2

by way of answer or motion, Respondent filed the motion to dismiss.  The material facts pertinent to the motion are to be found in the pleadings and in copies of the official records of state prison and judicial proceedings which have been provided by the parties, and as to which there is no factual dispute.

The Court will therefore review Respondent's motion to dismiss pursuant to its authority under Rule 4.

II.  <u>Background</u>

Petitioner, an inmate of the California Correctional Institution at Tehachapi, California (CCI), challenges his validation as an associate of the Black Guerrilla Family (BGF), which occurred on December 31, 2009, while Petitioner was an inmate of the California State Prison at Sacramento (CSP-SAC). (Pet., doc. 1, 18.)

Petitioner raises the following claims in the petition: 1) officials of the California Department of Corrections and Rehabilitation (CDCR) have abused the prison gang validation procedure as a ruse to punish the Petitioner for exercising his constitutional right to file complaints regarding staff's criminal behavior within the CDCR (<u>id.</u> at 5, 21,); 2) CDCR and prison officials illegally read Petitioner's confidential legal materials and work product concerning pending litigation against other CDCR agents in order to start a prison gang validation proceeding as a ruse to punish the Petitioner for filing grievances (<u>id.</u> at 7, 25); 3) CDCR and prison officials corruptly conspired to abuse the prison gang validation procedures as a ruse to punish the Petitioner for filing inmate grievances against CCI staff in violation of the First Amendment and without

3

a legitimate or valid penological purpose (id. at 29-30, 69-70);
4) prison officials used the gang validation procedure as a ruse
to punish Petitioner for reading Black militant literature which
Petitioner had a First Amendment right to read (id. at 31); 5)
CDCR and prison officials corruptly conspired to have Petitioner
validated as an active associate of the BGF and to retain him in
the Security Housing Unit (SHU) based on false, unreliable, and
misleading information, knowing that it would subject Petitioner
to a risk of retaliation and retribution from other groups in
prison who are opposed to the BGF, which resulted in the change
of Petitioner's release date from June 2013 to October 2016 (id.
at 32, 54); 6) Petitioner has a protected liberty interest not to
be placed into the SHU for an indeterminate term based on a false
and retaliatory prison gang validation which resulted from
inadequate procedural safeguards in the validation process and in
the procedures governing periodic review of inmates assigned to
indeterminate terms in the SHU for gang affiliation, and
Petitioner's right to due process of law was violated by an
indeterminate placement in the SHU without a determination that
the information relied upon had some indicia of reliability,
without the support of some evidence in the record, and without
an opportunity to present his views to the decision maker (id. at
55, 57-58, 66-68); and 7) Petitioner was subjected to an ex post
facto law by the application to him of Cal. Pen. Code §§ 2933(A)-
(B) and 3057(D), as effective on January 25, 2010, which rendered
gang-validated SHU inmates ineligible to earn time credits (id.
at 56, 61-62).

Petitioner requests the following relief: expungement from

his "C" file of the false, unreliable and insufficient

information used to validate his active association with the BGF;

release from the SHU; and return of various materials allegedly

taken wrongfully by CDCR agents.  (Pet. 72-73.)

III.   <u>State Administrative and Judicial Proceedings</u>

In 2010, Petitioner filed in prison what he described as a

citizen's complaint concerning employee conduct pursuant to Cal.

Pen. Code § 832.5 and Cal. Code Regs., tit. 15, §§ 3004 and

3391.[1]  The complaint was filed against Correctional Officers

Tyree, Turmezei, and unnamed "Does" for conspiring to retaliate

against Petitioner for having reported staff misconduct by

wrongfully having Petitioner placed into administrative

segregation based on false and misleading information concerning

prison gang activities.  (Mot., Ex. A, doc. 22-4 at 22.)

Petitioner requested that the matter be investigated by state and

federal authorities and that Petitioner be awarded two million

dollars in damages for retaliation.  (<u>Id.</u>)  Petitioner also asked

that the matter be processed as a staff complaint.  (<u>Id.</u> at 30-

31.)

Petitioner's complaint was denied at the second level on

March 8, 2010.  (<u>Id.</u> at 23, 32.)  A memorandum dated March 8,

2010, that was directed to Petitioner concerning the response

---

[1] The date of submission is illegible.  (Doc. 22-4 at 22.)
Further, because some of the pertinent pages of the exhibits to the
motion are missing from the courtesy copy provided to the Court, page
references are to the page numbers at the top of the page of the
electronically filed exhibits that are automatically assigned in the Court's
CM/ECF docketing system.
Petitioner's references are to title 15 of the California Code of
Regulations, §§ 3004 (concerning the rights and conduct of inmates and
employees) and 3391 (concerning employees' conduct and complaints concerning
employees' misconduct).

informed Petitioner that the appeal was being processed as a
staff complaint appeal inquiry. (Id. at 32.)  An interview with
Petitioner and a confidential inquiry into the validation
information was conducted, and thus the appeal was partially
granted; however, the conclusion was that staff did not violate
CDCR policy.  The memorandum informed Petitioner that all staff
personnel matters were confidential in nature and that if
Petitioner wished to appeal the decision, he had to appeal
through the Director's level of review.  (Id.)

Petitioner indicated his dissatisfaction and requested a
Director's Level Review.  (Id. at 23-27.)  At the Director's
Level, Petitioner's appeal was denied.  (Mot., ex. A, doc. 22-4
at 45, doc. 22-5 at 1.)

Petitioner filed a petition for writ of habeas corpus in the
Superior Court of the State of California for the County of Kern
(KCSC) on July 22, 2010, in which he challenged the 2009 gang
validation.  (Mot., ex. F.)  The grounds stated in the petition
were 1) prison officials abused the gang validation procedure to
retaliate against Petitioner for complaints concerning CDCR staff
misconduct; 2) CDCR staff illegally read and searched
Petitioner's confidential legal materials and work product in
order to start a prison gang validation procedure as a ruse to
punish the Petitioner for having filed grievances; 3) the abuse
of the prison gang validation procedure violated Petitioner's
First Amendment right to read any literature that did not affect
a legitimate penological interest, including Black militant
literature; and 4) CDCR prison officials corruptly conspired to
have Petitioner validated as an active prison gang associate of

the BGF and retained him in the SHU based on false, unreliable, and misleading information.  Petitioner requested that the false and unreliable information be expunged from his "C" file, his literature be returned, and that Petitioner be released from the SHU.  (Mot., ex. F, doc. 22-14 at 2-19.)

The KCSC denied the petition.  (Mot., Ex. E, Ord. dated September 22, 2010 at 3-4.)  In the order denying the petition, the KCSC concluded that various items of evidence were useable sources to sustain the gang validation.  (Id. at 2.)  Near the end of the court's discussion of the evidence used to validate Petitioner's gang association, the KCSC stated the following:

> Other staff complaints (sic) found no evidence of retaliation against petitioner by corrections officials.  Moreover, petitioner failed to exhaust his administrative remedies concerning the gang validation.  Pursuit of and exhaustion of administrative remedies is a prerequisite to seeking habeas corpus relief. *In re Dexter (1979) 25 Cal.3d 921, 925, In re Muszalski (1975) 52 Cal.3d 500, 508.*  The June 16, 2010 Directors' Level decision dealt with a staff complaint regarding fabrication of the gang validation by Officers Turmezei and Sgt. Tyree.  That decision opined that petitioner is not privy to staff complaint investigatory findings since they are privileged under P.C. Sections 832.7 and 832.8 due to their (sic) confidential personnel decisions.
>
> It did not directly address the evidence to sustain the validation.  However, even if petitioner exhausted his administrative remedies, the court finds more than sufficient evidence to sustain the gang validation. So long as there is evidence to sustain the gang validation, this court will not disturb it. *In re Lucero (1992) 4 Cal.App.4th 572, 575, Cato v. Rushen (1987) 824 F.2d 703, 705 (9th Cir.).*  Contrary to petitioner's allegation that he cannot belong to two gangs, the evidence shows otherwise.
>
> On the basis of the foregoing, the petition for writ of habeas corpus is accordingly denied.

(Id.)

1    Petitioner sought reconsideration, which the KCSC denied on

2   November 29, 2010, ruling that no new evidence was submitted to

3   warrant a change of position, and noting that the court was aware

4   of no authority that permitted a court to reconsider a petition

5   for writ of habeas corpus.  (Mot., exs. H, G.)

6    Petitioner filed a petition in the Court of Appeal of the

7   State of California, Fifth Appellate District (CCA), (mot., ex.

8   D), which the court denied on November 30, 2010, without a

9   statement of reasons or citation to any authority, (mot., ex. C).

10    Petitioner filed a petition for writ of habeas corpus in the

11   California Supreme Court (CSC), alleging that the CCA's denial of

12   his petition violated his rights under the First, Eighth, and

13   Fourteenth Amendments, and seeking the same relief sought in the

14   KCSC.  (Mot., ex. A at 2-49.)  The CSC denied the petition on

15   June 29, 2011, without a statement of reasons or citation of

16   authority.  (Mot., ex. B.)

17    IV.  Procedural Default

18    Respondent argues that the case should be dismissed because

19   Petitioner's claims are procedurally defaulted based on

20   Petitioner's failure to exhaust his state administrative remedies

21   as required under California law.

22    A.  Petitioner's Procedural Default

23    The doctrine of procedural default is a specific application

24   of the more general doctrine of independent state grounds.  It

25   provides that when state court decision on a claim rests on a

26   prisoner's violation of either a state procedural rule that bars

27   adjudication of the case on the merits or a state substantive

28   rule that is dispositive of the case, and the state law ground is

8

independent of the federal question and adequate to support the judgment such that direct review in the United States Supreme Court would be barred, then the prisoner may not raise the claim in federal habeas absent a showing of cause and prejudice or that a failure to consider the claim will result in a fundamental miscarriage of justice. Walker v. Martin, - U.S. -, 131 S.Ct. 1120, 1127 (2011); Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003); Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994). The doctrine applies regardless of whether the default occurred at trial, on appeal, or on state collateral review. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

On federal habeas corpus review, when it fairly appears that the state court judgment rested primarily on federal law or was interwoven with federal law, and the adequacy and independence of any possible state law ground is not clear from the face of the petition, it is presumed that the state court decided the case the way it did because it believed that federal law required it to do so. Coleman v. Thompson, 501 U.S. at 734-36; Harris v. Reed, 489 U.S. 255, 266 (1989). In such a case, a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly stated that its judgment rested on a procedural bar. Coleman v. Thompson, 501 U.S. at 733, 735-36; Harris v. Reed, 489 U.S. at 266. Where a state court discusses a state procedural bar as a separate basis for its decision but then, in an alternative holding, discusses the merits of the federal claim, the court has clearly and

expressly stated its reliance on a procedural ground, and the procedural bar applies.  Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003); Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992) (citing Coleman v. Thompson, 501 U.S. 722 and Harris v. Reed, 489 U.S. at 264 n.10).

Here, the KCSC issued a reasoned decision; however, both the CCA and the CSC summarily denied Petitioner's habeas petitions. Where there has been one reasoned state judgment rejecting a federal claim, later, unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  Thus, where the California Supreme Court denies a habeas petition without citation or comment, a district court will "look through" the unexplained decision of that state court to the last reasoned decision of a lower court as the relevant state court determination.  Ylst v. Nunnemaker, 501 U.S. at 803-04; Taylor v. Maddox, 366 F.3d 992, 998 n.5 (9th Cir. 2004).  A petitioner has the burden to overcome or rebut the presumption by strong evidence that the presumption, as applied, is wrong.  Ylst, 501 U.S. at 804.  Here, the Court has not been presented with any basis to overcome the presumption.  The Court will thus look through the unexplained appellate decisions to the decision of the KCSC.

The decision of the KCSC shows that although the court considered and found sufficient evidence supporting the gang validation, it also expressly and alternatively concluded that Petitioner failed to exhaust his administrative remedies concerning the gang validation and noted that such exhaustion was

1  a prerequisite to seeking habeas relief.  (Ex. E.)  The KCSC

2  noted not only the procedural default of filing only a staff

3  complaint concerning the conduct of two officers, which was a

4  confidential personnel matter, but also the resulting decision on

5  the complaint, which did not directly address the evidence to

6  sustain the gang validation.  (Id.)  It thus appears that the

7  state court clearly and expressly indicated it reliance on

8  Petitioner's actual procedural default as an alternative holding.

9      Because state procedural default is an affirmative defense,

10  the state has the obligation to plead the defense or lose the

11  right to assert the defense thereafter.  Bennett v. Mueller, 322

12  F.3d at 585.  Further, the state bears the ultimate burden of

13  persuasion as to the adequacy and independence of the pertinent

14  rule.  Id. at 585-86.  However, once the state adequately pleads

15  the existence of an independent and adequate state procedural

16  ground as an affirmative defense, the burden to place the defense

17  in issue shifts to the petitioner, who may satisfy the burden by

18  asserting specific factual allegations that demonstrate the

19  inadequacy of the state procedure, including citation to

20  authority demonstrating inconsistent application of the rule.

21  Id. at 586.  Once the petitioner has done so, the ultimate burden

22  of proof of the defense is on the state.  Id. at 586.

23      Here, Respondent has raised the procedural default and has

24  set forth authority supporting the existence of an independent

25  and adequate state procedural ground.  (Mot., doc. 22, 5-6.)  As

26  Respondent notes, the state court cited In re Dexter, 25 Cal.3d

27  921, 925 (1979), which stands for the proposition that a state

28  habeas petitioner "will not be afforded judicial relief unless he

11

has exhausted available state administrative remedies." <u>In re</u> <u>Dexter</u>, 25 Cal.3d at 925.

For a state procedural rule to be independent, the state law basis for the decision must not be interwoven with federal law. <u>Bennett v. Mueller</u>, 322 F.3d at 581.  A state law ground is so interwoven if the state has made application of the procedural bar depend on an antecedent ruling on federal law, such as the determination of whether federal constitutional error has been committed.  <u>Id.</u>  Independence is determined as of the date of the state court order that imposed the procedural bar.  <u>La Crosse v.</u> <u>Kernan</u>, 244 F.3d 702, 704 (9th Cir. 2001).

Here, California's administrative exhaustion requirement proceeds from state statutory and regulatory law.  <u>See</u>, Cal. Pen. Code § 5058 (authorizing the promulgation of regulations for administration of the prisons); Cal. Code Regs., tit. 15, § 3084.1 (providing a comprehensive and mandatory administrative appeal process for inmates' grievances or challenges to prison rules).  In <u>Dexter</u>, the court referred to the administrative exhaustion requirement as a "general rule" and cited multiple California cases.  <u>Dexter</u>, 25 Cal.3d at 925.  In <u>In re Muszalski</u>, 52 Cal.App.3d 500 (1975), a case also cited by the KCSC in its order denying Petitioner's habeas petition, the court described the exhaustion requirement as being "well settled as a general proposition."  <u>Muszalski</u>, 52 Cal.App.3d at 503.  California's administrative exhaustion rule thus is based solely on state law and thus is independent of federal law.  <u>See</u>, <u>Edwards v. Small</u>, 2011 WL 976606, *8-9 (No. 10CV918-JM(JMA), S.D.Cal. Feb. 18, 2011) (collecting state authorities).

In the absence of exceptional circumstances, a procedural ground is "adequate" where it is firmly established and regularly followed at the time of the default.  Walker v. Martin, –U.S.–, 131 S.Ct. at 1127-28.  Since 1941, California's administrative exhaustion requirement has been applied and has been recognized as established.  Abeilleira v. District Court of Appeal, Third Dist., 17 Cal.2d 280, 292-93 (1941) (describing the rule as a settled, "fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of stare decisis, and binding upon all courts").  The rule has been consistently applied since Abelleira was decided.  See, e.g., In re Muszalski, 52 Cal.App.3d at 503 (characterizing the rule as well settled); Rojo v. Kliger, 52 Cal.3d 65, 84 (1990) (describing the rule as "oft-quoted" in connection with the need to exhaust administrative remedies provided for a statutory right); California Correctional Peace Officers Assn. v. State Personnel Bd., 10 Cal.4th 1133, 1148 (1995) (stating that the authorities applying the rule were "so numerous that only the more important ones need be cited" for purposes of illustration); see also, Drake v. Adams, 2009 WL 2474826, *2 (No. 2:07-cv-00577-JKS, E.D.Cal. Aug. 11, 2009) (stating that a review of California cases in which the issue of exhaustion of administrative remedies was decided during the previous ten years revealed no case in which a California appellate court did not deny a petition for writ of habeas corpus for failure to comply with the rule).  Thus, the rule applied in the present case was adequate to support the judgment.

Petitioner did not assert specific factual allegations that

1  demonstrate the inadequacy of the state procedure.  The Court

2  concludes that the state's rule of exhaustion of administrative

3  remedies was independent and adequate.

4      In response to the motion to dismiss, Petitioner argues that

5  he did exhaust his claims in the state courts, and specifically

6  that his staff complaint was adequate to exhaust his

7  administrative remedies.  Petitioner cites to 42 U.S.C. § 1997e,

8  part of the Prison Litigation Reform Act (PLRA), and authorities

9  applying it, such as Griffin v. Arpaio, 557 F.3d 1117, 1119-20

10 (9th Cir. 2009).  Petitioner argues that pursuant to the standard

11 adopted in Griffin, his staff complaint was sufficient to alert

12 prison authorities to the nature of the wrong for which redress

13 is sought.

14      However, Petitioner is not proceeding pursuant to the PLRA.

15 With respect to habeas corpus proceedings, it is established that

16 when a federal court considers the issue of a procedural default,

17 it will not review the propriety of the state court's application

18 of its default.  Poland v. Stewart, 169 F.3d 573, 584 (9th Cir.

19 1999).  In Poland, the court limited its review because it stated

20 it lacked subject matter jurisdiction to review state court

21 applications of state procedural rules.  Id.  The Supreme Court

22 has also indicated that a federal court will not review the

23 propriety of a state court's application of an independent and

24 adequate state law ground, reasoning that if a habeas petitioner

25 has failed to meet a state's procedural requirements for

26 presenting his federal claims, then the petitioner has deprived

27 the state courts of an opportunity to address the claims in the

28 first instance.  Lambrix v. Singletary, 520 U.S. 518, 523 (1997).

14

Such claims could not be reviewed by the United States Supreme

Court on direct review because of a lack of jurisdiction to

review judgments resting on a state law ground that is

independent of the federal question and adequate to support the

judgment.  Id.  Equitable considerations of federalism and comity

require federal courts to apply the independent and adequate

state ground doctrine; otherwise, a federal district court or

court of appeals would be able to review claims that the United

States Supreme Court would have been unable to consider on direct

review.  Id.

An exception to limited review has been recognized where the

state court's interpretation of the state procedural law is

clearly untenable and amounts to a subterfuge to avoid federal

review of a deprivation of rights protected by the Constitution.

Lopez v. Schriro, 491 F.3d 1029, 1043 (9th Cir. 2007), cert.

den., Schriro v. Lopez, 552 U.S. 1224 (2008).

Here, Petitioner filed a staff complaint seeking damages

because of staff misconduct; Petitioner did not file a grievance

seeking to be released from the SHU or to set aside the gang

validation because of defects in the process or in the nature or

quantum of evidence supporting the validation.  Cal. Code Regs.,

tit. 15, § 3084.2 requires the inmate to raise one issue or

related set of issues per appeal form and to describe on the form

the specific issue and action requested; it expressly states that

any decision rendered will pertain only to the present appeal

issue and "requested action(s)."  § 3084.2(a)(1), (2); (b)(1).

It was thus tenable for the state court to rule that Petitioner

failed to exhaust administrative remedies.  Petitioner arguably

1  failed to comply with the requirement of § 3084.2(a)(2) because
2  he failed to describe any specific issue and action requested
3  beyond the staff misconduct and request for money damages.

4      Further, the regulations specifically provide for prison
5  staff to determine whether an appeal alleging staff misconduct
6  should be processed as a routine appeal or as a staff complaint;
7  if an appeal is processed as a staff complaint, then the inmate
8  will be notified that any other issues besides the staff
9  misconduct that are present in the appeal raising the staff
10 complaint may only be appealed separately, and thus re-submission
11 of those issues within thirty calendar days is required if the
12 intention is to seek resolution of such matters.  Cal. Code
13 Regs., tit. 15, §§ 3084.5(b)(4); 3084.9(i).  Thus, in light of
14 the exceptional nature of a staff complaint and the failure of
15 Petitioner to include other issues in the staff complaint, the
16 state court tenably and reasonably could have concluded that
17 Petitioner's failure to file a separate grievance concerning his
18 gang validation, status as a gang associate, and his housing
19 assignment, as well as his failure to seek the specific action of
20 invalidating the gang validation and releasing Petitioner from
21 the SHU, constituted a failure to exhaust administrative remedies
22 as to those issues.

23     The Court concludes that the state court's application of
24 its procedural bar was not clearly untenable and did not amount
25 to a subterfuge to avoid federal review.  This Court thus will
26 not review the state court's application of its procedural bar.

27     Petitioner further contends that his petition is not
28 procedurally defaulted because the state court adjudicated his

16

claim or claims on the merits.  However, as previously noted, the
state court clearly and expressly imposed a procedural bar as an
alternative to a review of the merits, and thus, the procedural
bar was not vitiated.

B.  <u>Cause and Prejudice</u>

If the respondent has asserted the procedural default
doctrine in a timely and proper fashion, and if the default
provides an independent and adequate state procedural ground for
decision, the petitioner is barred from raising the defaulted
claims unless the petitioner can 1) excuse the default by
demonstrating cause for the default and actual prejudice as a
result, or 2) show that the case comes within the category of
cases the Supreme Court has characterized as fundamental
miscarriages of justice.  <u>Coleman v. Thompson</u>, 501 U.S. at 722.

Cause is a legitimate excuse for the default.  <u>Thomas v.</u>
<u>Lewis</u>, 945 F.2d 1119, 1123 (9th Cir. 1991).  A demonstration of
cause generally means that the petitioner must show that some
objective factor external to the defense impeded efforts to
construct or raise a claim, such as a showing that the factual or
legal basis for a claim was not reasonably available, counsel was
ineffective in failing to preserve a claim, or some interference
by officials made compliance impracticable.  <u>Coleman v. Thompson</u>,
501 U.S. at 753 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 492
(1986)).

Here, Petitioner has not alleged any facts that would
support a conclusion that there was any objective factor external
to the defense that impeded efforts to construct or raise a
claim.  Petitioner's staff complaint showed that he knew the

1   factual basis for his claim, and there is no basis for an

2   inference that the legal basis of his claim was not reasonably

3   available.  Petitioner was not represented by counsel, and there

4   is no indication of any interference by officials.

5      In a declaration, Petitioner re-alleges his claims of

6   retaliatory gang validation and reiterates facts in support of

7   those claims concerning the allegedly retaliatory gang

8   validation.  He also details a more temporally remote history of

9   Petitioner's reports of staff misconduct in the CDCR within the

10  past two decades.  (Doc. 24, 13-42.)  These facts do not

11  establish any cause for Petitioner's procedural default.

12     In asserting that he was not a member of the BGF, Petitioner

13  alleges that he suffers from "major mental illnesses," takes

14  unspecified anti-psychotic medications, and was housed for many,

15  unspecified years in the enhanced outpatient program; thus, he

16  could not be a member of a gang because no California prison gang

17  members or associates are permitted to take such medications or

18  be housed within the CDCR's mental health programs. (Id. at 32-

19  33.)  Petitioner's allegations are general and do not support a

20  conclusion that any external factor or conduct related to his

21  mental condition excused his procedural default.

22     It is concluded that Petitioner has not shown cause for his

23  procedural default.

24          C.  Miscarriage of Justice

25     A procedural default may be excused for a fundamental

26  miscarriage of justice, such as where a petitioner can show that

27  a constitutional violation has probably resulted in the

28  conviction of one who is actually innocent.  See, Murray v.

18

1  <u>Carrier</u>, 477 U.S. 478, 495-96 (1986).  Petitioner has made no

2  showing of facts warranting a conclusion that there was a

3  fundamental miscarriage of justice.

4      Accordingly, it is concluded that this Court's review of

5  Petitioner's petition is foreclosed by Petitioner's procedural

6  default.  It will thus be recommended that Respondent's motion to

7  dismiss be granted.

8      V.   <u>Exhaustion of State Court Remedies</u>

9      Respondent argues that Petitioner's claims should be

10  dismissed because Petitioner did not exhaust his state court

11  remedies as to his claims.

12      Pursuant to the foregoing analysis, this Court has concluded

13  that Petitioner's claims were procedurally defaulted.  This

14  conclusion essentially moots the issue of exhaustion of state

15  court remedies.  The procedural default determination is

16  dispositive, and it is thus unnecessary to reach Respondent's

17  additional argument that Petitioner did not exhaust state court

18  remedies as to his claims.  <u>Cooper v. Neven</u>, 641 F.3d 322, 327-28

19  (9th Cir. 2011).

20      Alternatively, the Court concludes that Petitioner failed to

21  exhaust his state court remedies.

22      A petitioner who is in state custody and wishes to challenge

23  collaterally a conviction by a petition for writ of habeas corpus

24  must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).

25  The exhaustion doctrine is based on comity to the state court and

26  gives the state court the initial opportunity to correct the

27  state's alleged constitutional deprivations.  <u>Coleman v.</u>

28  <u>Thompson</u>, 501 U.S. at 731; <u>Rose v. Lundy</u>, 455 U.S. 509, 518

1   (1982); Buffalo v. Sunn, 854 F.2d 1158, 1162-63 (9th Cir. 1988).

2   A petitioner can satisfy the exhaustion requirement by

3   providing the highest state court with the necessary jurisdiction

4   a full and fair opportunity to consider each claim before

5   presenting it to the federal court, and demonstrating that no

6   state remedy remains available.  Picard v. Connor, 404 U.S. 270,

7   275-76 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir.

8   1996).  A federal court will find that the highest state court

9   was given a full and fair opportunity to hear a claim if the

10  petitioner has presented the highest state court with the claim's

11  factual and legal basis.  Duncan v. Henry, 513 U.S. 364, 365

12  (1995) (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 9-10

13  (1992), superceded by statute as stated in Williams v. Taylor,

14  529 U.S. 362 (2000) (factual basis).

15  Although non-exhaustion of remedies has been viewed as an

16  affirmative defense, it is the petitioner's burden to prove that

17  state judicial remedies were properly exhausted.  28 U.S.C.

18  § 2254(b)(1)(A); Darr v. Burford, 339 U.S. 200, 218-19 (1950),

19  overruled in part on other grounds in Fay v. Noia, 372 U.S. 391

20  (1963); Cartwright v. Cupp, 650 F.2d 1103, 1104 (9th Cir. 1981).

21  If available state court remedies have not been exhausted as to

22  all claims, a district court must dismiss a petition.  Rose v.

23  Lundy, 455 U.S. at 515-16.

24  A claim must be fairly presented to the state's highest

25  court through the appropriate procedures.  See, Picard v. Connor,

26  404 U.S. at 275.  A claim is not fairly presented if the state's

27  highest court does not reach the merits of a claim because of the

28  procedural context in which it was presented.  See, e.g.,

Castille v. Peoples, 489 U.S. 346, 351 (1989) (holding that a
petitioner's claims were not fairly presented where he presented
his claims to the highest state court for the first and only time
in petitions for allocatur, in which review of the merits was not
a matter of right, but rather was discretionary when there were
special and important reasons for review); Pitchess v. Davis, 421
U.S. 482, 488 (1975) (holding that a claim was not fairly
presented by filing pretrial petitions for a writ of prohibition
in the state intermediate and highest appellate courts where
state law established that a writ of prohibition was an
extraordinary writ whose use for pretrial review was normally
limited to questions of first impression and general importance,
the petitions were denied without opinion such that the denial
could not be fairly read as an adjudication on the merits of the
claim, and the denial did not bar raising the same points on
post-trial appellate review, which remained available); Roettgen
v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994) (holding that a claim
was not fairly presented by bypassing direct appeal or an
authorized mode of collateral attack that foreclosed habeas
corpus, and instead filing a petition for habeas corpus).

Here, the state courts did not reach the merits of
Petitioner's claims, but rather denied his petitions for failure
to exhaust administrative remedies pursuant to a rule that
foreclosed judicial relief absent such exhaustion.  Thus,
Petitioner's failure to comply with the prison's administrative
remedies foreclosed consideration of the merits of the petition.

Accordingly, Petitioner failed to exhaust his state court
remedies.

1    In view of this conclusion, it is unnecessary to consider

2  Respondent's claim that Petitioner failed to raise his ex post

3  facto claim in his petition to the California Supreme Court.

4    In summary, it is concluded that Respondent's motion to

5  dismiss should be granted.

6    VI.  <u>Certificate of Appealability</u>

7    Assuming that the Court adopts the following recommendation

8  to grant the motion to dismiss, it must be considered whether to

9  issue a certificate of appealability.

10    Unless a circuit justice or judge issues a certificate of

11  appealability, an appeal may not be taken to the Court of Appeals

12  from the final order in a habeas proceeding in which the

13  detention complained of arises out of process issued by a state

14  court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537

15  U.S. 322, 336 (2003).  A certificate of appealability may issue

16  only if the applicant makes a substantial showing of the denial

17  of a constitutional right.  § 2253(c)(2).  Under this standard, a

18  petitioner must show that reasonable jurists could debate whether

19  the petition should have been resolved in a different manner or

20  that the issues presented were adequate to deserve encouragement

21  to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336

22  (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A

23  certificate should issue if the Petitioner shows that jurists of

24  reason would find it debatable whether the petition states a

25  valid claim of the denial of a constitutional right and that

26  jurists of reason would find it debatable whether the district

27  court was correct in any procedural ruling.  <u>Slack v. McDaniel</u>,

28  529 U.S. 473, 483-84 (2000).

1    In determining this issue, a court conducts an overview of
2   the claims in the habeas petition, generally assesses their
3   merits, and determines whether the resolution was debatable among
4   jurists of reason or wrong.  Id.  It is necessary for an
5   applicant to show more than an absence of frivolity or the
6   existence of mere good faith; however, it is not necessary for an
7   applicant to show that the appeal will succeed.  Miller-El v.
8   Cockrell, 537 U.S. at 338.

9    A district court must issue or deny a certificate of
10  appealability when it enters a final order adverse to the
11  applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

12   Here, it does not appear that reasonable jurists could
13  debate whether the petition should have been resolved in a
14  different manner.  Petitioner has not made a substantial showing
15  of the denial of a constitutional right.

16   Accordingly, it will be recommended that the Court decline
17  to issue a certificate of appealability.

18  VII.  Recommendations

19   Accordingly, it is RECOMMENDED that:

20   1) Respondent's motion to dismiss the petition be GRANTED;
21  and

22   2) The petition be DISMISSED; and

23   3) The Court DECLINE to issue a certificate of
24  appealability; and

25   4) The Clerk be DIRECTED to close the case.

26   These findings and recommendations are submitted to the
27  United States District Court Judge assigned to the case, pursuant
28  to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of

the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:**   **October 22, 2012**          /s/ **Barbara A. McAuliffe**
                                  UNITED STATES MAGISTRATE JUDGE